

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

Signed June 28, 2022

_____
**United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| In re:<br><br>ROGELIO GUADALUPE GOMEZ-TORRES and MARCELA GOMEZ,<br><br>Debtors. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No.: 21-50051-RLJ-7 |
| PRODUCTION CREDIT ASSOCIATION OF SOUTHERN NEW MEXICO,<br><br>Plaintiff,<br><br>v.<br><br>TRES RIOS CATTLE COMPANY, LLC, ROGELIO GUADALUPE GOMEZ-TORRES, and MARCELA GOMEZ,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Adversary No. 21-05014 |

## MEMORANDUM OPINION

This adversary proceeding arises under the chapter 7 bankruptcy of Rogelio Guadalupe Gomez-Torres and Marcela Gomez. Rogelio and Marcela were the owners/managers of Tres Rios Cattle Company, LLC ("Tres Rios"), which is also in bankruptcy (Rogelio, Marcela, and

1

Tres Rios collectively referred to as "Debtors"). Production Credit Association of Southern New Mexico ("Production Credit"), a creditor of the Debtors and the plaintiff in this case, brought this adversary proceeding under both §§ 523 and 727 of the Bankruptcy Code. Section 523 concerns exceptions to the discharge of debts owed to the plaintiff; section 727 concerns the denial of discharge of *all* debts of the debtor. The Debtors now move to dismiss nine claims in Production Credit's complaint ("Complaint"). As explained below, the Court denies the motion in part and, if Production Credit fails to amend the Complaint, grants the motion in part.

## BACKGROUND

Production Credit alleges the following facts, among others, in the Complaint:

**Loans to the Debtors**

On November 1, 2018, the Debtors and Production Credit executed a note and loan agreement extending $1,800,000 to the Debtors as a revolving line of credit. The Debtors defaulted on the note by failing to meet their borrowing-base requirements, and on September 4, 2019, Production Credit gave the Debtors a notice of default on the note. On January 29, 2020, the Debtors and Production Credit entered into a forbearance agreement. Under the agreement, the Debtors provided Production Credit liens on certain property, and Production Credit agreed to forbear from exercising its remedies under the note and extended the existing line of credit.

After the forbearance, the Debtors made a series of defaults by failing to make payments under the note, failing to meet borrowing-base requirements, failing to provide financial statements, and failing to convey property to Production Credit. The Debtors and Production Credit subsequently entered into three amendments to the forbearance agreement. Under the amendments, Production Credit agreed to continue to forbear from exercising its remedies in exchange for new liens, financial statements, and proceeds of property sales. The Debtors

continued to default on their obligations after each amendment and remained in default up to the date they filed bankruptcy, April 16, 2021.

**Production Credit's Inspections of the Debtors' Operations**

To assess the operations of the Debtors, Production Credit employees conducted an onsite inspection and evaluation of the Debtors' cattle operations on March 30, 2021. At the inspection, the Debtors represented that they owned 3,470 head of cattle. After the Debtors filed bankruptcy, they sought the use of Production Credit's cash collateral, and the Court authorized such use on May 20, 2021. Under the Court's cash-collateral order, the Debtors were required to, among other things: (1) regularly provide Production Credit with borrowing base reports, (2) provide Production Credit with any new contracts for the sale of cattle, (3) provide Production Credit with reports on the cattle operation, and (4) maintain an inventory of at least 3,000 head of cattle. The Debtors failed to comply with each of these obligations.

Because the Debtors failed to supply Production Credit with the information required under the cash-collateral order, Production Credit conducted another inspection of the Debtors' operations on July 9, 2021. At that inspection, Production Credit discovered the Debtors had further failed to comply with the order. Production Credit found only 1,548 head of cattle at the Debtors' farm—1,922 less than were identified at the March inspection—when they were required to maintain an inventory of 3,000. The missing 1,922 cattle were either sold, with the proceeds kept for the Debtors, or falsely identified as cattle belonging to other parties.

The Debtors urged Production Credit to perform another inspection, contending they actually held 3,750 head of cattle. On August 18, 2021, Production Credit performed a third inspection and found that conditions at the Debtors' farm had significantly deteriorated. The

Debtors produced that morning a borrowing base report showing only 1,321 head of cattle, and Production Credit found numerous dead and malnourished cattle at the farm.

**The Debtors' Other Frauds and Interference with Production Credit's Rights**

The Debtors represented to Production Credit that they had a "custom cattle operation" under which they would care for cattle owned by other parties. But such an operation never existed—the operation was a façade invented to hide collateral and proceeds from Production Credit. Under this scheme, the Debtors used Production-Credit loans to fund the purchase of "custom cattle" and disguised the purchases through fabricated invoices for goods. The Debtors would then represent to Production Credit that the cattle were owned by third parties, when in fact they were owned exclusively by the Debtors and constituted Production Credit's collateral. The Debtors never presented to Production Credit a "custom cattle" agreement with any of the other cattle operations with which the Debtors claimed to be working.

Additionally, the Debtors have continued to sell cattle in violation of orders by the Court and the bankruptcy trustee that directed them to halt transactions taken without necessary Court approval. These sales occurred "off the books" to avoid accounting for proceeds in the bankruptcy proceedings. The Debtors also sold collateral through a non-debtor entity, Optimum Cattle, LLC, as a way to conceal such sales from the Court and the trustee.

At the 341(a) meeting of creditors held on June 25, 2021, Marcela Gomez committed to no longer take payments from Tres Rios going forward. Despite this, the Debtors continued to list Marcela on the payroll, and she continued to receive payments as an employee.

On September 22, 2021, the Court issued an order granting Production Credit's motion for relief from the automatic stay. The order allowed Production Credit immediate access to its collateral then in possession of the Debtors and ordered the Debtors to not interfere with

Production Credit's attempts to take control of the collateral. The Debtors did not, however, remove themselves from the farm once Production Credit arrived. When Production Credit's employees entered the premises to take possession of Production Credit's collateral, the Debtors' representatives brandished knives and exhibited threatening behavior. Rogelio and Marcela's son threatened Production Credit's night watchman with a gun and threatened potential purchasers of cattle to leave the premises or "bullets [would] start flying." ECF No. 1 at 17.[1] And the Debtors contacted the Texas Department of Health to prevent Production Credit from shipping cattle from the Tres Rios farm.

On December 20, 2021, Production Credit filed the Complaint, asserting causes of action for breach of contract, punitive damages, attorney's fees; and, as pertinent here, asserting nine causes of action opposing either Rogelio and Marcela's discharge of *all* debts (the § 727 dischargeability causes) or their discharge of debts owed to Production Credit (the § 523 dischargeability causes). On March 4, 2022, the Debtors brought the present motion for dismissal of the nine discharge/dischargeability causes of action.

## DISCUSSION

### I. Standard for Motion to Dismiss

The Debtors move to dismiss the Complaint for failure to state a claim under Rule 12(b)(6).[2] To avoid dismissal, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).[3] "Though the complaint need not contain 'detailed factual allegations,' it must contain sufficient factual material that, accepted as true, 'allows the court to draw the reasonable inference that the defendant is liable

---

[1] "ECF No." hereinafter refers to the numbered docket entries in this adversary proceeding, No. 21-05014.
[2] "Rule" hereinafter refers to the Federal Rules of Civil Procedure. Rule 12(b)(6) is incorporated into the Federal Rules of Bankruptcy Procedure by Bankruptcy Rule 7012.
[3] Incorporated into the Federal Rules of Bankruptcy Procedure by Bankruptcy Rule 7008.

5

for the misconduct alleged.'" *Kelson v. Clark*, 1 F.4th 411, 416 (5th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

When fraud is alleged in a pleading, the standard for surviving a motion to dismiss is raised, and "a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b).[4] "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Thomas v. Abebe*, 833 F. App'x 551, 554 (5th Cir. 2020) (quoting *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003)). "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out." *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010) (quoting *Benchmark*, 343 F.3d at 724).

In reviewing the Complaint, the Court must "draw all inferences in favor of the nonmoving party, and view all facts and inferences in the light most favorable to the nonmoving party." *McLin v. Ard*, 866 F.3d 682, 688 (5th Cir. 2017) (quoting *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009)). Furthermore, the Court "must limit itself to the contents of the pleadings, including attachments thereto." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

---

[4] Incorporated into the Federal Rules of Bankruptcy Procedure by Bankruptcy Rule 7009.

**II.     Section 523(a)(2)(A) and Section 523(a)(2)(B)**

The Debtors move to dismiss Production Credit's causes that object to the dischargeability of debts under § 523(a)(2)(A) and (B).[5] Because § 523(a)(2)(A) and (B) are causes based on deceit and fraud, the heightened pleading standard of Rule 9(b) applies to a motion to dismiss. *Bennett v. Lindsey (In re Lindsey)*, 733 F. App'x 190, 192 (5th Cir. 2018); *Guerriero v. Kilroy (In re Kilroy)*, 354 B.R. 476, 488 (Bankr. S.D. Tex. 2006), *aff'd*, No. 06-3320, 2007 WL 1456006 (S.D. Tex. May 15, 2007).

Under § 523(a)(2)(A), a debt obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition" is not discharged in bankruptcy. For a debt to be nondischargeable on account of a false representation, "[t]he misrepresentations must have been: (1) knowing and fraudulent falsehoods, (2) describing past or current facts, (3) that were relied upon by the other party." *Allison v. Roberts (In re Allison)*, 960 F.2d 481, 483 (5th Cir. 1992). A debt is nondischargeable under § 523(a)(2)(B) if it is obtained by:

> (B) use of a statement in writing—
>     (i) that is materially false;
>     (ii) respecting the debtor's or an insider's financial condition;
>     (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
>     (iv) that the debtor caused to be made or published with intent to deceive.

§ 523(a)(2)(B).

Subsections 523(a)(2)(A) and (B) have been described as:

> two close statutory companions barring discharge. One applies expressly when the debt follows a transfer of value or extension of credit induced by falsity or fraud (not going to financial condition), the other when the debt follows a transfer or extension induced by a materially false and intentionally deceptive written statement of financial condition upon which the creditor reasonably relied.

---

[5] "Section" or § refers to 11 U.S.C, the Bankruptcy Code, unless otherwise stated.

*Field v. Mans*, 516 U.S. 59, 66 (1995). Subsection (B) *requires* that the underlying statements relate to the debtor's financial condition, while subsection (A) requires that the underlying statements *do not* relate to the debtor's financial condition. Therefore, whether a statement relates to the debtor's financial condition may determine whether the statement provides the basis for a nondischargeability claim under subsection (A) or (B). Statements that relate to a debtor's financial condition are those that "purport to present a picture of a debtor's financial health," including "statements of changes in overall financial position" and "statements that present the debtor or insider's net worth, overall financial health, or equation of assets and liabilities." *Material Prods. Int'l, Ltd. v. Ortiz (In re Ortiz)*, 441 B.R. 73, 80 (Bankr. W.D. Tex. 2010) (quoting *Cadwell v. Joelson (In re Joelson)*, 427 F.3d 700, 714 (10th Cir. 2005)).

Production Credit's Complaint alleges that the Debtors falsely represented that they were operating a "custom cattle" operation and created false invoices to deceptively sell cattle under the name of Optimum Cattle. ECF No. 1 ¶¶ 3.42 and 3.45. These are materially false statements. But because they relate to discrete aspects of the Debtors' operations, they do not "purport to present a picture of the debtor's overall financial health" and therefore may form the basis for the Debtors' subsection (A) but not subsection (B) claim. *Ortiz*, 441 B.R. at 80.

Production Credit also alleges that the Debtors intentionally and knowingly underreported the number of cattle in their possession through written borrowing base reports. *Id.* ¶¶ 3.29, 3.33, 3.41–3.43, and 5.3. These statements were false claims that concern the Debtors' financial condition because they relate to the overall collateral position of Production Credit and the financial health of the Debtors, as opposed to statements relating to a specific asset. They may therefore form the basis for Production Credit's subsection (B) claim. Production Credit also alleges that it relied on each of these misrepresentations—those that form

8

the basis of Production Credit's subsection (A) and (B) claims—and that it would not have entered into the forbearance-agreement amendments but for the misrepresentations. *Id.* ¶¶ 5.2 and 5.3. It alleges that it sustained financial loss because of the misrepresentations. *Id.* ¶ 5.2. These facts sufficiently lay-out the elements of Production Credit's claims under § 523(a)(2)(A) and (B) as required by Rule 9.

### III. Section 523(a)(4)

The Debtors move to dismiss Production Credit's § 523(a)(4) dischargeability cause. Subsection (a)(4) states that a debt obtained by "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny" is not discharged. § 523(a)(2)(4). Defalcation is defined as "a willful neglect of duty, even if not accompanied by fraud or embezzlement." *Schwager v. Fallas (In re Schwager)*, 121 F.3d 177, 182 (5th Cir. 1997) (quoting *LSP Inv. P'ship v. Bennett (In re Bennett)*, 989 F.2d 779, 790 (5th Cir. 1993)). "Fraud theories under § 523(a)(4) are subject to the heightened pleading standard of Rule 9(b) while defalcation, embezzlement, and larceny theories must meet Rule 8(a)(2)." *Chowdary v. Ozcelebi (In re Ozcelebi)*, 635 B.R. 467, 477 (Bankr. S.D. Tex. 2021).

The Debtors admit that Rogelio and Marcela Gomez owed a fiduciary duty to Tres Rios. And throughout the Complaint, Production Credit outlined several instances of "a willful neglect of duty" by Rogelio and Marcela. *In re Schwager*, 121 F.3d at 182. Production Credit alleges that the Debtors failed to adequately provide borrowing base reports, underreported the number of cattle at inspections, and failed to account for the disappearance of farm equipment. ECF No. 1 ¶¶ 3.11, 3.16, 3.17, 3.27–3.29, 3.33, and 3.41. Production Credit also alleges that Rogelio and Marcela deliberately diverted funds from Tres Rios for personal gain. *Id.* ¶ 5.4. Each of these allegations, taken as true, may rise to the level of defalcation.

9

Absent from the Complaint, however, is an explanation of a causal connection between these defalcations and the creation of any specific debt. Section 523(a)(4) prevents discharges of debts *for* defalcation. This means that the debt must have arisen from the defalcation and the debtor must be liable to the creditor for the defalcation. *Cowin v. Countrywide Home Loans, Inc. (In re Cowin)*, 864 F.3d 344, 351 (5th Cir. 2017). Therefore, merely stating that a debtor engaged in defalcation and that he also accrued a debt is insufficient to state a claim under § 523(a)(4)—there must be a statement of some causal connection. Nowhere in the Complaint does Production Credit explain how the Debtors' defalcations caused any specific debt. For this reason, Production Credit has inadequately pleaded its claim under § 523(a)(4).

The Debtors' motion is the first challenge to the Complaint, and Production Credit has requested an opportunity to amend the Complaint if it is found to be insufficient. The Court will grant such request. Production Credit will, therefore, have twenty-one days after the issuance of this Memorandum Opinion to amend the Complaint to properly assert a § 523(a)(4) claim. *See* Fed. R. Civ. P. 15(a)(1) (allowing twenty-one days after service to amend a complaint as a matter of course). If Production Credit has not amended the Complaint by that date, its claim under § 523(a)(4) will be dismissed.

## IV. Section 523(a)(6)

The Debtors move to dismiss Production Credit's § 523(a)(6) causes of action. Under subsection (a)(6), any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity" is not discharged in bankruptcy. § 523(a)(6). "[F]or a debt to be non-dischargeable under § 523(a)(6), there must be 'a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury.'" *Berry v. Vollbracht (In re Vollbracht)*, 276 F. App'x 360, 361 (5th Cir. 2007) (emphasis in original) (quoting *Kawaauhau v. Geiger*, 523

10

U.S. 57, 61 (1998)). For an intentional injury to occur, there must exist "either an objective substantial certainty of harm or a subjective motive to cause harm on the part of the debtor." *Id*. (quotation and citation omitted). Because § 523(a)(6) makes no mention of fraud, it is subject to the lower pleading standard of Rule 8. *Kilroy*, 354 B.R. at 489.

Production Credit alleges that the Debtors sold cattle subject to Production Credit's lien under the guise of a separate entity to avoid detection by Production Credit, which caused significant loss to Production Credit. ECF No. 1 ¶ 5.5. The Debtors contend Production Credit's allegations rise only to the level of a breach of contract and thus do not meet the "deliberate or intentional injury" standard. However, the Debtors' sale of Production Credit's collateral could amount to conversion, a type of traditional, intentional tort clearly encompassed by § 523(a)(6). *See Kawaauhau*, 523 U.S. at 61–64. Production Credit has also alleged that these actions were committed intentionally with the knowledge that Production Credit would be harmed. ECF No. 1 ¶¶ 3.44–3.45 and 4.5.

Like its § 523(a)(4) claim, however, Production Credit does not identify any debt that was caused by the Debtors' conduct. Section 523(a)(6) prevents discharges of debts *for* willful and malicious injury. This means the debt sought to be discharged must "arise from a willful and malicious injury." *Williams v. Int'l Brotherhood of Elec. Workers Local 520 (In re Williams)*, 337 F.3d 504, 513 (5th Cir. 2003). Production Credit never explains how any specific debt arose from the Debtors' sale of Production Credit's collateral—it merely asserted that the Debtors converted collateral and debts were created with no causal explanation. For this reason, Production Credit has inadequately pleaded its claim under § 523(a)(6).

As with the § 523(a)(4) cause, Production Credit will have twenty-one days after the issuance of this Memorandum Opinion to amend the Complaint to properly assert a § 523(a)(6)

11

claim. If Production Credit has not amended the Complaint by that date, its claim under § 523(a)(6) will be dismissed.

V.      **Section 727(a)(2)(A)**

The Debtors move to dismiss Production Credit's § 727(a)(2)(A) cause of action. Such section provides that a debtor shall not receive a discharge of any debts in bankruptcy if:

> the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
> (A) property of the debtor, within one year before the date of the filing of the petition.

§ 727(a)(2). Four elements must be proven to succeed on a § 727(a)(2) claim: "(1) a transfer [or concealment] of property; (2) belonging to the debtor; (3) within one year of the filing of the petition; [and] (4) with intent to hinder, delay, or defraud a creditor or officer of the estate." *Laughlin v. Nouveau Body and Tan, L.L.C. (In re Laughlin)*, 602 F.3d 417, 421 (5th Cir. 2010) (alterations in original) (quoting *Cadle Co. v. Pratt (In re Pratt)*, 411 F.3d 561, 565 (5th Cir. 2005)). "Because a fraudulent intent is required, § 727(a)(2) is subject to Rule 9(b)." *Kilroy*, 354 B.R. at 489.

Production Credit alleges in its Complaint that, between April 2020 and April 2021, the Debtors "sold cattle through falsified invoices and asked employees to cash checks in their own name in sales of cattle owned by Tres Rios." ECF No. 1 ¶ 5.7. Production Credit further alleges that "[t]hese acts were intended to conceal the property transfers to avoid detection by [Production] Credit." *Id*. Production Credit also says that, in March 2021, the Debtors underrepresented the number of cattle in their possession to conceal collateral from Production Credit. *Id*. ¶ 3.33. The Debtors argue that these factual allegations are insufficient because Production Credit never specified that the Debtors owned the concealed or fraudulently

12

transferred cattle. But Production Credit did specifically state that the cattle were the Debtors'. *Id*. ¶¶ 3.33 and 5.7. By pleading that the Debtors transferred and concealed cattle belonging to Production Credit within one year before they filed bankruptcy with intent to defraud Production Credit, Production Credit has adequately pleaded its § 727(a)(2)(A) claim.

## VI.   Section 727(a)(2)(B)

The Debtors move to dismiss Production Credit's § 727(a)(2)(B) cause of action. This cause provides that a debtor shall not receive a discharge of any debts in bankruptcy if:

> the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
> …
>    (B) property of the estate, after the date of the filing of the petition.

§ 727(a)(2). The requirements of § 727(a)(2)(B) mirror those of (A), except that the property concealed or transferred must have been property of the bankruptcy estate after the debtor filed bankruptcy, as opposed to property of the debtors before bankruptcy. Section 727(a)(2)(B) is subject to the pleading requirements of Rule 9. *Kilroy*, 354 B.R. at 489.

Production Credit alleges in the Complaint that the Debtors secretly sold cattle subject to Production Credit's lien with the intent to defraud Production Credit, even after they filed bankruptcy. ECF No. 1 ¶¶ 5.8 and 3.34–.36. Production Credit also alleges that, after the Debtors filed bankruptcy, the Debtors underrepresented the number of cattle in their possession to conceal collateral from Production Credit. *Id*. ¶¶ 3.34–3.37. By alleging that the Debtors transferred and concealed cattle that were property of the bankruptcy estate with intent to defraud Production Credit, Production Credit has adequately pleaded its § 727(a)(2)(B) claim.

**VII.     Section 727(a)(4)**

The Debtors move to dismiss Production Credit's claim for a universal denial of discharge under § 727(a)(4). This section provides that a debtor shall not receive a discharge of any debts in bankruptcy if:

> the debtor knowingly and fraudulently, in or in connection with the case—
>    (A) made a false oath or account.

§ 727(a)(4). To succeed on a claim under this section, a party must prove "that (1) the debtor made a ... statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement was material to the bankruptcy case." *The Cadle Co. v. Duncan (In re Duncan)*, 562 F.3d 688, 695 (5th Cir. 2009) (quoting *Sholdra v. Chilmark Fin. LLP (In re Sholdra)*, 249 F.3d 380, 382 (5th Cir. 2001)). "False statements in the debtor's schedules or false statements by the debtor during the proceedings are sufficient to justify denial of discharge." *Id*. "Because § 727(a)(4) requires a showing that [the debtor] 'knowingly and fraudulently' made the false oath or presented a false claim, the heightened pleading standard of Rule 9 applies." *Parker v. Miller (In re Miller)*, 589 B.R. 550, 565 (Bankr. S.D. Miss. 2018).

Production Credit alleges in the Complaint that the Debtors on at least three occasions misrepresented the number of cattle in their possession. ECF No. 1 ¶¶ 3.33–3.47 and 5.9. It alleges that Marcela Gomez lied during the 341(a) meeting of creditors when she claimed she would no longer receive compensation from Tres Rios. *Id*. ¶¶ 3.46, 5.9. And it alleged that the Debtors falsified Tres Rios' financial schedules. *Id*. ¶ 5.9. Production Credit alleges these misrepresentations were committed with the intent to defraud Production Credit, the chapter 7 trustee, and/or the bankruptcy court. *Id*. ¶¶ 3.41 and 5.9. These statements and their import were all material to the bankruptcy case as they concern estate assets that could be used to pay

14

creditors. Production Credit has thus adequately pleaded its claim under § 727(a)(4) in accordance with Rule 9.

## VIII. Section 727(a)(5)

The Debtors move to dismiss Production Credit's § 727(a)(5) causes of action. This section provides that a debtor shall not receive a discharge of any debts in bankruptcy if "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." § 727(a)(5). "The plaintiff in a discharge adversary proceeding carries the initial burden to show that the debtor possessed 'substantial, identifiable assets' that are now 'unavailable for distribution to creditors.'" *Chu v. Texas (In re Chu)*, 679 F. App'x 316, 319 (5th Cir. 2017) (quoting *In re Chu*, No. 12-37962–HDH–7, at *7 (Bankr. N.D. Tex. Aug. 26, 2014)). Because § 727(a)(5) makes no mention of fraud, it is subject to the lower pleading standard of Rule 8. *Mobilization Funding, LLC v. Edwards (In re Edwards)*, No. 20-20178-RLJ-7, 2021 WL 4690928, at *5 (Bankr. N.D. Tex. Oct. 4, 2021) (citing 6 COLLIER ON BANKRUPTCY ¶ 727.08).

Production Credit's Complaint alleges that the Debtors owned cattle, farm equipment, and real property within one year of the bankruptcy-petition date. ECF No. 1 ¶¶ 3.12, 3.13, 3.18, 3.33, and 5.10. It further alleges that the Debtors were no longer in possession of these assets at or around the time of the bankruptcy-petition date. *Id*. ¶ 5.10. And Production Credit alleges that neither the Debtors' schedules nor their statements of affairs explain the disposition of these assets. *Id*. ¶¶ 3.36 and 5.9–5.10. The Debtors claim it is possible that these missing assets were property of other parties, not the Debtors. That possibility, however, is irrelevant—the Court must construe Production Credit's allegations as true at the motion to dismiss stage, and

15

Production Credit has alleged that the property in question was the Debtors' property. Production Credit has thus adequately pleaded its claim under § 727(a)(5).

## IX. Section 727(a)(6)(A)

The Debtors move to dismiss Production Credit's claim for a universal denial of discharge under § 727(a)(6)(A). Such section provides that a debtor shall not receive a discharge of any debts in bankruptcy if "the debtor has refused, in the case … to obey any lawful order of the court." § 727(a)(6)(A). To succeed on a claim under § 727(a)(6)(A), a party must prove: "1) the Court issued an order directed at the debtor; 2) the order was lawful; 3) the order was not one requiring a response to a material question or to testify; and 4) the debtor refused to obey the order." *Hughes v. Wells (In re Wells)*, 426 B.R. 579, 608–09 (Bankr. N.D. Tex. 2006) (quoting *Gillman v. Green (In re Green)*, 335 B.R. 181, 183 (Bankr. D. Utah 2005)). Additionally, because the statute uses the word "refused," "the debtor's lack of compliance with the order must be 'willful and intentional.'" *Id*. at 609 (quoting *Missouri ex rel. Nixon v. Foster (In re Foster)*, 335 B.R. 709, 716 (Bankr. W.D. Mo. 2006)). As § 727(a)(6)(A) makes no mention of fraud, it is subject to the lower pleading standard of Rule 8. *Hill v. Yoon (In re Yoon)*, No. 10-30558, 2011 WL 1258179, at *1 (Bankr. S.D. Tex. Apr. 1, 2011).

Production Credit alleges in the Complaint that the Court issued a lawful cash-collateral order on May 20, 2021. ECF No. 1 ¶¶ 3.34 and 5.11. And then it alleges that the Debtors violated four specific provisions of the cash-collateral order. *Id*. ¶ 3.34. Production Credit says that the Debtors intentionally committed these violations. *Id*. ¶¶ 3.36, 3.41, and 3.43–3.47. Production Credit has thus adequately pleaded its claim under § 727(a)(6)(A).

## X. Conclusion

Production Credit has adequately pleaded its causes of action under §§ 523(a)(2)(A), 523(a)(2)(B), 727(a)(2)(A), 727(a)(2)(B), 727(a)(4), 727(a)(5), and 727(a)(6)(A). The allegations of the Complaint on these causes of action comply with the requirements of Rules 8 and 9, where applicable. Production Credit has not adequately pleaded its causes of action under §§ 523(a)(4) and 523(a)(6). Such causes of action will be dismissed unless, within twenty-one days of the issuance of this Memorandum Opinion, Production Credit amends the Complaint to cure the deficiencies of these two causes of action. The Court will issue an order.

### End of Memorandum Opinion ###